UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | NO. 15-CR-10338-FDS |
| JOSE VASQUEZ, et al | ) ) | |

**JOSE VASQUEZ' SENTENCING MEMORANDUM**

Now Comes, Jose Vasquez, defendant in the above captioned matter, who files this Sentencing Memorandum in support of his request for a sentence of 180 months. In support of this request, defendant states the following:

**I.      BACKGROUND**

Mr. Vasquez pled guilty to Count 2, which charged him with Conspiracy to Conduct Enterprise Affairs through a Pattern of Racketeering Activity, in violation of 18 U.S.C. § 1962(d).  The two applicable predicates are (a) accessory after the fact for murder and (b) attempted murder.  In the first, he knowing disposed of material evidence relating to the murder of a gang rival.  In the second, he participated in the stabbing of a suspected gang rival, where the victim sustained serious and life threatening injuries.  The victim survived.  One of Mr. Vasquez's codefendants in attempted murder case, Angela Pineda, was sentenced to 93 months for his involvement in the instant Racketeering offense.

The defendant and the government have entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   If the Court accepts this plea agreement, the parties recommend that Mr. Vasquez be sentenced to a term of imprisonment of between 180 and 216 months with 3 years of supervised release.

## II      MR. VASQUEZ' PERSONAL CHARACTERISTICS

Despite the charges in this case, Mr. Vasquez's criminal history is not significant. He has no juvenile dispositions and his adult criminal history involves (a) pretrial probation (case dismissed) in a state case for pushing a school employee who had asked him to leave the school premises; and (b) a conviction for assault and battery with a dangerous weapon for one of the predicates in this case. He served a short house of correction sentence for this second offense. In fact, his criminal history was increased by two points because of the fact that he was on probation for the pretrial probation when the instant offense occurred. While Mr. Vasquez had some interaction with the judicial system, it has, again, not been significant.

Mr. Vasquez' family life is a bit unusual even in the context of this case. He is an American citizen who was relocated at one year old to El Salvador. PSR ¶ 84. His mother soon returned to the U.S. leaving him and his brother, Noe, who is also a defendant in this case, in the care of his grandparents in rural El Salvador. PSR ¶ 85. His mother sent money back as support but did not ask for his custody again until five years later when he was seven years old. *Ibid*. This transition was difficult for Mr. Vasquez since he did not know English, had no friends and was culturally estranged from his birth nation, the U.S. *Ibid*.

This sense of abandonment and cultural divide led to Mr. Vasquez' placement in foster care after reports that his parents were abusive. PSR ¶ 86. According to his mother, he had difficulty fitting into school, was harassed by gang recruiters and eventually, at the suggested of a family member, joined a gang for self-protection. PSR ¶ 87.

## III     THE GUIDELINES

Title 18, U.S. Code §3553(A) requires the court to impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing. Although the sentencing

guidelines are an important benchmark, they are advisory and only one factor in meeting the statutory mandate. *United States v. Booker*, 543 U.S. 220, 258-265 (2005). Congress has articulated factors to guide the court when determining the need for the sentence to reflect the basic aims of sentencing, "namely (a) just punishment (retribution); (b) deterrence, (c) incapacitation, (d) rehabilitation." *Rita v. United States*, 551 U.S. 338, 348 (2007).

With respect to application of the Guidelines, the district court cannot presume that the Guidelines range applies to any particular case. *Rita v. United States*, 551 U.S. 338 (2007). Rather, the Guidelines are simply a starting point from which the district court then has the discretion to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.  Sentencing under Section 3553(a) therefore requires the Court to start with the minimum sentence permissible and add only so much additional punishment, if any, as is necessary to comply with Section 3553(a)'s purposes. See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (Section 3553(a) "as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing . . . .") Factors that this Court can consider are broad and discretionary when determining what sentence is appropriate pursuant to 18 U.S.C. §3553(a).

While Mr. Vasquez' conduct is serious and warrants a significant sentence, a term of imprisonment not to exceed 180 months (15 years) is sufficient to meet the goals of sentencing in this case.  It avoids disparity in sentencing given the range of sentences for individuals similarly situated (see Angel Pineda and his 93 month sentence.)  For general deterrence purposes, it is doubtful that any sentence will deter individuals from joining these gangs given the coercion tactics employed by gang recruiters, the ages when the members are recruited and the violence in

the communities where these young men live, which draws them into gang life as a means of survival.  Consequently, a 15 year sentence will achieve this goal of general deterrence given Mr. Vasquez' background, age and family history.

Similarly, a fifteen year sentence will deter Mr. Vasquez from further criminal activity.  He will be in his mid thirties upon release and under supervised release for 3 years.  An additional 3 years, as requested by the government, will not act as additional deterrence to Mr. Vasquez from committing further crimes.  The only real purpose between a 15 and 18 year sentence is whether that additional time serves is necessary to punish the defendant and/or protect the public.

There is no question that MS-13 is a violent street gang that must be extinguished.  Tough sentences achieve that goal.  Fifteen years is objectively a tough sentence which will take Mr. Vasquez off the streets and protect the public for a significant time.  Mr. Vasquez, unlike some of the other defendants in this case, is not a lost cause.  He is a natural born citizen, who speaks English and is only 26 years old.  He is not a drug abuser and his criminal history is limited.  While he dropped out of school in 9th grade, he can easily earn his GED.  He has a work history in manual labor jobs, but an interest in auto mechanics. PSR ¶ 103-104.

When Mr. Vasquez is released, he will remain in the U.S. and be separated from many of the individuals who were influenced his involvement in this gang.  While his brother will receive a significant sentence, his parents will be available to support him upon release.  He has a future.

A fifteen year sentence will serve to protect the public from Mr. Vasquez given his background.  He will be subjected to 3 years of supervised release which will act as a guidepost for him and a second tier of protection for the public.  A fifteen year sentence will give him an

opportunity to develop work skills and to rehabilitate himself. This sentence will achieve all the goals of sentencing but is not harsher than necessary.

Wherefore, defendant moves this Court to accept the plea agreement and to impose a sentence of fifteen years and three years of supervised release, no fine and a one hundred dollar assessment.

Respectfully submitted\
on behalf of Jose Vasquez,

/s/ James Budreau
James Budreau, Bar #559931
20 Park Plaza, Suite 1005
Boston, MA 02116
617-366-2200

Certificate of Service

I, James Budreau, counsel of record for the defendant Jose Vasquez, herby certify that I served this motion to all counsel of record by filing same electronically by way of the Court's ECF system on this 24th day of August 2018.

/s/ James Budreau