**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JOSE VASQUEZ, a/k/a "LITTLE CRAZY"** | **Criminal No. 15-10338-FDS** |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

Jose Vasquez, a/k/a "Little Crazy," is the leader of the Trece Locos Salvatrucha clique, one of the most violent MS-13 cliques operating in Massachusetts between 2014 and 2016. Two co-conspirators from Vasquez's clique (Jairo Perez and Rigoberto Mejia) have pleaded guilty to racketeering conspiracy and admitted responsibility for the brutal murder of a 16-year-old boy in January 2016. A third co-conspirator from Vasquez's clique (Modesto Ramirez) has pleaded guilty to racketeering conspiracy and admitted responsibility for conspiring to commit murder. For his part, Vasquez furthered MS-13's mission through not just his words as an MS-13 leader, but also his actions. In September 2014, Vasquez participated in the attempted murder of a 16-year-old boy who suffered life-threatening injuries. After spending minimal time in state custody for that attack, Vasquez's racketeering activity continued, and in January 2016, he was an accessory after the fact to murder where he helped hide the murder weapons and clothes worn by the murderers. For his leadership of the TLS clique, his encouragement of murder, his active participation in an attempted murder, and his actions taken as an accessory to murder, the Court should sentence Vasquez to ***216 months in custody followed by 3 years of supervised release.***

## I. Defendant's Plea and Plea Agreement

On May 11, 2018, the defendant pleaded guilty pursuant to a binding plea agreement under Rule 11(c)(1)(C). In relevant part, the key provisions of the plea agreement are as follows:

*First*, the parties agreed that the defendant's adjusted offense level (prior to acceptance of responsibility) would be 42 because (i) the defendant's racketeering activity involved an attempted murder where the victim sustained permanent or life-threatening bodily injury; (ii) the defendant's racketeering activity involved him being an accessory after the fact to first degree murder; and (iii) the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. *See* Plea Agreement, § 4.

*Second*, the parties agreed that the Court would impose a sentence of incarceration for no more than 216 months (18 years) and no less than 180 months (15 years), to be followed by 36 months (3 years) of supervised release. *Id.* at § 5.

*Third*, the defendant waived his right to appeal both his conviction and his sentence. *Id.* at § 6.

## II. The Guideline Sentencing Range, the Statutory Maximum Sentence, and the Government's Sentencing Recommendation.

As discussed below, the government's recommended sentence of 216 months is appropriate and necessary to comply with the purposes of 18 U.S.C. § 3553(a). As an initial matter, however, it is worth noting that even the government's recommended sentence is a below-Guidelines recommendation that was largely necessitated by the statutory maximum. If not for the statutory maximum of 240 months, the defendant's

guideline range would have been 292 to 365 months. *See* PSR, ¶ 108. Based on the statutory maximum, the defendant's guideline range is 240 months. *Id.* However, given that the Court could only have sentenced the defendant to 240 months after trial, any plea agreement would necessarily have required the government agreeing to recommend something less than the statutory maximum. Accordingly, the government agreed to cap its recommendation by giving the defendant a further 10% discount from his guideline range (240 months down to 216 months). The proposed plea allowed for a reasonable and fair resolution, conserved judicial resources, and allowed the government to focus on the multiple co-conspirators who participated in murder. For the reasons below, an even greater downward variance from the bottom of the guidelines is unwarranted and would be insufficient to comply with the purposes set forth in 18 U.S.C. § 3553(a).

## III. A Sentence of 216 Months is Sufficient and No Greater Than Necessary to Further the Goals of Sentencing.

### A. The Nature and Circumstances of the Offense Support the Government's Recommendation.

The nature and circumstances of the defendant's conduct are extremely troubling and should not be overshadowed by the actions of his co-conspirators. Taken on his own merits, Vasquez's actions merit significant punishment and he does not deserve the significant downward variance requested by the defense.

*First,* Vasquez is a member of MS-13, arguably the most violent and dangerous criminal organization operating in the United States today. *See* PSR, ¶¶ 11-22. Over the past two years, this Court has become all-too-familiar with exactly what it means

to become an MS-13 member and advance up its ranks, and it is almost assuredly the case that Vasquez's past involved uncharged crimes and acts of violence.

*Second*, Vasquez did more than just join MS-13—he was the leader of the TLS clique. *See* PSR, ¶¶ 23-44. Every member of the TLS clique led by Vazquez who was indicted in this case was involved in racketeering activity involving murder—either as an active participant, as an accessory after the fact, or as a participant in a conspiracy to commit murder. *See* PSR, ¶ 25.

*Third*, Vasquez was personally involved in advancing the mission of MS-13 through violence, including being involved in the attempted murder of a 16-years-old boy. *See* PSR, ¶¶ 26-34. On the afternoon of September 8, 2014, Chelsea Police officers responded to Blossom Street for a report of a stabbing where they found the victim bleeding profusely from multiple stab wounds. PSR, ¶ 26. The victim was transported to Massachusetts General Hospital for emergency, life-saving treatment. *Id.* Medical records from Massachusetts General Hospital confirmed the nature and seriousness of the victim's life-threatening injuries. *See* PSR, ¶ 33. The victim was admitted to the emergency department and subsequently received care in the pediatric intensive care unit. *Id.*[1] The victim had multiple stab wounds to the chest,

---

1 Given that Vasquez's initial guideline calculation was already much higher than the statutory maximum of 240 months, the government gave Vasquez the benefit of the doubt by not pursuing an enhancement for vulnerable victim. Although it is highly likely that Vasquez "knew or should have known" that the victim he was attacking was a minor and thus especially vulnerable, the government has not sought this enhancement in this case. Nonetheless, the Court can certainly consider the victim's age when evaluating the nature and circumstances of the offense and where to sentence Vasquez within the agreed-upon range.

abdomen, back, and extremities. *Id.* His associated injuries included bilateral diaphragm lacerations, hemothorax (blood in the chest cavity), pneumothorax (air in the chest cavity), rib fracture, laceration of the liver, and laceration of the spleen. *Id.* Thankfully, the victim survived, although even the best medical care in the country may not have saved him if Vasquez's machete had not gotten stuck inside its sheath, thus preventing Vasquez from landing a fatal blow. *See* PSR, ¶ 30-32.

*Fourth*, the location and timing of the attempted murder is especially shocking and should be considered an aggravating factor. Like the murder of 16-year-old Cristofer de la Cruz in January 2016 (that Vasquez assisted by burying the murder weapons and other incriminating evidence), the attempted murder of the 16-year-old victim in September 2014 was also committed on a public street where a young boy was stabbed multiple times and left to die. This attack was not even in the middle of the night, but in broad daylight on a public street.






Shortly after the attempted murder, Vasquez and his co-conspirators were captured on surveillance video running away as cars drove by and people walked by.




Even as attempted murders go, gang members trying to repeatedly stab and murder a teenager on a public street in broad daylight is especially troubling and appalling.

*Fifth*, the post-attack statements by Vasquez make clear that he was no less invested in committing murder in furtherance of MS-13's mission than his co-conspirators who succeeding in killing someone. *See* PSR, ¶¶ 29-30 (summarizing recording that captured Vasquez being disappointed because "the fucking son of a bitch didn't die" and "the fucking bastard survived"; quoting Vasquez stating that "I want the rival gang members to see a photo" and "the next time they will know … the fucking rival dude is not going to be left alive").

*Sixth*, Vasquez was an accessory after the fact to the murder of Cristofer de la Cruz in January 2016. *See* PSR, ¶¶ 35-44. De la Cruz was brutally murdered in an attack where he suffered 48 sharp force injuries (by TLS member Jairo Perez and others) and multiple gunshot wounds (by TLS member Rigoberto Mejia). *See* PSR, ¶¶ 39-40, 42. Following the murder, Vasquez went with CW-1 and Perez to Deer Island in Winthrop, MA to bury the evidence of the murder, including the murder weapons and clothes worn by the murderers. PSR, ¶¶ 42-43. During this trip, Vasquez discussed MS-13 activities, his role as leader of the TLS clique, and the murder of De la Cruz. PSR, ¶ 40. This conversation demonstrated that Vasquez knew certain details of the murder, including how other MS-13 members had previously attacked De la Cruz and how De la Cruz was struck in the head by the machetes that Vasquez was helping bury. *Id.* At one point, Vasquez referred to the one of the machetes used to strike De la Cruz in the head by saying, "The fucking thing is there with a wad of hair twisted all around it." *Id.* At another point, Vasquez suggested that they throw the machetes in the water instead of burying them. *Id.* The group

ultimately decided to bury the evidence at Deer Island, where it was recovered by an FBI Evidence Response Team. *Id.*

In short, the defendant's leadership of the TLS clique and his actions as an MS-13 member demonstrated his hunger for violence and thirst to further the goals of MS-13. Vasquez and other members of his clique, as well as co-conspirators from other cliques, actively sought to commit murder in furtherance of the MS-13 racketeering enterprise. The evidence leaves no doubt that the defendant shared the same intent as his co-conspirators who succeeded in committing murder, and, but for luck, Vasquez would himself have been facing a murder charge. The nature and circumstances of the offense strongly support the government's sentencing recommendation of 216 months in custody followed by 3 years of supervised release.

**B. The History and Characteristics of the Defendant <u>Support the Government's Sentencing Recommendation</u>.**

The history and characteristics of the defendant also support the government's sentencing recommendation.

*First*, the violence and racketeering activity summarized above is significant and warrants a lengthy period of incarceration. These types of facts do not support a defense request for a significant downward variance.

*Second*, Vasquez is one of the only defendants in this case that is a citizen of the United States who was born in Massachusetts. PSR, ¶ 84. In many ways, this fact cuts against him. Unlike some of the other defendants in this case who came to this country illegally, had no local family, and were then immediately thrust into a gang environment, the defendant was here legally and had family in the state. *Id.*

To the extent Vasquez spent time in El Salvador as a young child, it appears "the family did not endure any serious financial hardships," and the defendant then returned to the United States when he was seven years old. *Id.* The government does not minimize that the defendant had certain socio-economic struggles and had trouble adjusting when he returned, but he had a far better opportunity to do something productive with his life than many of his co-conspirators.

*Third,* and troublingly, Vasquez or "Little Crazy" is the brother of Noe Salvador Perez Vasquez, a/k/a "Crazy" or "Big Crazy," who led the notoriously violent Everett Locos Salvatrucha clique. *See* PSR, ¶ 24. This Court recently sentenced Perez Vasquez to life in prison for being an MS-13 leader who participated in murder, and if the victim of Vasquez's attempted murder had died, Vasquez may very well have been facing life in prison like his brother.

*Fourth*, it is unclear whether the defendant has truly accepted responsibility, learned his lesson, and committed himself to following the law. According to the Plymouth County Correctional Facility and the Wyatt Detention Facility, during the instant detention, Vasquez has received disciplinary reports for conduct such as fighting, disruptive conduct towards staff, participating in a group disturbance (telling a group of detainees that another detainee was a "rat"), and possession of a weapon (a sharpened screw from a pair of crutches). PSR, ¶ 6.

**C. The Other Sentencing Factors Also Support the Government's Sentencing Recommendation.**

The need for the sentence to promote respect for the law, afford adequate deterrence, and reflect the seriousness of the offense also argue strongly for a

significant period of incarceration and support the government's recommended sentence of 216 months.

It does not promote respect for the law to give MS-13 leaders who are heavily invested in committing murder a significant downward variance, and it does not reflect the seriousness of the offense to give a significant downward variance when the defendant would have been facing a first degree murder charge if not for luck and the victim receiving urgent, world-class, medical care. The government thought long and hard before agreeing to a plea deal where the defendant received even a 10% downward variance from his guideline range, and no further downward variance is warranted.

Importantly, specific deterrence is a bigger concern for this defendant than for most others in this case. Unlike almost every other defendant who will be deported upon the completion of his sentence, Vasquez is a citizen, thus increasing the need to protect the local community from further crimes by the defendant. Further, Vasquez seems more inextricably involved with MS-13 than most because he has a brother who was also an MS-13 leader and who will be serving life in prison. Given the evidence the Court has heard about how membership in MS-13 is often for life and how difficult it is to ever leave the gang, the defendant's associational relationships raise significant concerns about his ability to break all contacts with MS-13 and re-enter the Massachusetts community in a peaceful and productive way.

Finally, the government's sentencing recommendation took into account the relative culpabilities of the various co-defendants and the need to avoid unwarranted

sentencing disparities, and the government can address those at the sentencing hearing if needed. To the extent that the defendant's sentencing memorandum raised the comparison with Angel Pineda a/k/a Bravo, the other participant in the attempted murder, *see* Def. Memo. at p. 1 (stating that Pineda received 93 months), the government notes the following: *First*, Pineda's plea agreement called for a sentence of 120 months, but he received credit for the 834 days he served in state custody for the underlying offense, thus resulting in an additional 93 months in federal custody. *Second*, Pineda's offense conduct did not additionally include being an accessory after the fact to a brutal murder, as was the case with Vasquez, who helped bury the evidence related to the January 2016 murder. *Third*, and perhaps most importantly, Pineda was a low-level member of MS-13 and not a leader like Vasquez. It is entirely appropriate for Pineda to have received a functional 120-month sentence and Vasquez to receive a 216-month sentence.

The government's views of the relative culpabilities of these defendants has not changed in the past year or two as the case has progressed, and the government addressed relative culpability at Pineda's sentencing hearing as well:

> *AUSA Levitt*:
>
> What we've tried to do here is sort of similar to what we've done in a lot of multi-defendant cases is try to separate the defendants into categories of culpability for sentencing, here, four categories, and in determining which category a defendant would fall looking at culpability for the sentence of conviction, overall culpability, including things we know about the defendant in terms of intelligence, 3553 factors, other factors that may weigh into where the person would fit, leadership, role in the offense, age, really any sort of factor that really would be encompassed in 3553.

> So with the first category being the most serious, which would include the defendants who are charged with murder in this case, ***other defendants who might have been engaged in conduct short of murder, violent and also held a leadership position, whether formal or informal, having to do with inciting violence, we might put them into that first category.***
>
> Where we put Mr. Pineda is really in the third category, and that's sort of a broad category in terms of a sentencing number. The factors that we considered there, clearly the offense of conviction, this was a really terrible stabbing where the victim easily could have been killed, the fact that the defendant does not have any sort of leadership position, he was a chequeo, a probationary member is of significance to us.

Transcript of Aug. 23, 2017 Pineda Sentencing, available at Dkt. No. 1296 (emphasis added). As demonstrated in that discussion, Pineda is easily distinguishable from Vasquez, and Vasquez belongs in the most serious category of offenders sentenced in this case. He was engaged in extremely violent conduct that fell just short of murder, while also having a significant leadership position in the gang.

## CONCLUSION

For the reasons above, the Court should sentence Vasquez to ***216 months (18 years) in custody followed by 3 years of supervised release.***

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ Kunal Pasricha
Kunal Pasricha
Glenn A. MacKinlay
Kelly B. Lawrence
Christopher Pohl
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that the foregoing document was filed through the Electronic Court Filing (ECF) system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

/s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney